**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, GENERAL COMMITTEE OF ADJUSTMENT, CENTRAL REGION, | ) ) ) ) ) | No. 08 C 99999 |
| *Plaintiff*, | ) ) | FILED: JUNE 23, 2008 |
| v. | ) ) | 08CV 3591 |
| | ) | JUDGE ANDERSEN |
| UNION PACIFIC RAILROAD COMPANY, | ) ) | MAGISTRATE JUDGE MASON |
| *Defendant*. | ) ) | EDA |
| | ) | |

**COMPLAINT**

Plaintiff Brotherhood of Locomotive Engineers and Trainmen, General Committee of

Adjustment, Central Region ("BLET"), by and through their undersigned attorneys, complain of

defendant Union Pacific Railroad Company ("Union Pacific") as follows:

**INTRODUCTION**

1.   BLET brings this action seeking injunctive relief from Union Pacific's continuous

and willful violations of engineers' federal rights under the Family Medical Leave Act (FMLA).

The engineers represented by BLET are on call 24 hours a day, seven days a week, weekends

and holidays.  At present, the only way that engineers get *any* time off from this round-the-clock

schedule without discipline is to "lay off" by the use of previously approved FMLA leave,

notwithstanding the engineers' other contractual leave rights which Union Pacific is currently

disputing in other forums.

2.   In Count I, BLET alleges that Union Pacific's new policy of calculating FMLA

leave violates the FMLA rights of BLET engineers in at least five respects.  This new policy of

calculating FMLA leave was unilaterally developed and implemented by Union Pacific after the

United States District Court for the Northern District of Illinois invalidated Union Pacific's old

FMLA policy which had unlawfully calculated leave rights based on the number of "starts" or

trips taken by the engineers instead of the "hours worked" by the engineers when they actually

took the trips.   The District Court's decision of October 17, 2007 invalidating Union Pacific's

old policy of calculating FMLA leave occurred in the case of *Brotherhood of Locomotive*

*Engineers and Trainmen, General Committee of Adjustment Central Region; A.K. Schad, Mark*

*Alexander, Dustin Etherton, Paul Moeller, and T.D. Curtis, on behalf of themselves and others*

*similarly situated, v. Union Pacific Railroad Company*  (07 C 0160)(Lindberg J.)(U.S. Dist Ct.

N.D. Ill.).  The District Court declined to take jurisdiction over the BLET's challenge to the

calculation of hours worked under the new replacement policy, and accordingly BLET has filed

this action, alleging five separate violations arising under the new FMLA leave policy:

       a.  In violation of 29 U.S.C. §2612, Union Pacific has unlawfully shortened the

            "normal *workweek*" which is used to determine the twelve weeks of leave

            permitted under FMLA by counting the engineer's use of any prior "intermittent"

            FMLA leave (3 days or less).  By counting days off in one of these prior weeks,

            Union Pacific purports to reduce the "normal" number of hours in a "normal

            workweek" of the engineer, i.e., to penalize the engineer for any prior use of

            FMLA leave on an intermittent basis.   Such a penalty for prior use of FMLA

            leave so as to reduce the "normal" workweek is unlawful.

       b.  In violation of 29 C.F.R. §825.205(b), Union Pacific has also unlawfully

            shortened the true number of hours worked in a "normal workweek" by failing to

            count certain hours that many engineers spend at the "away from home terminal"

waiting for a return trip or hours they spend when they are "dead-headed" or

transported to initiate a "start" or trip at an "away from home terminal" that may

be several hours away from their home terminal.

c.  In violation of 29 C.F.R. §825.205(d) which provides for calculation of a work

week when the hours are variable, Union Pacific unlawfully fails to determine the

variable hour work week each time leave is taken.  If the work week is variable,

FMLA necessarily requires such a re determination each time leave is taken when

Union Pacific is using a "variable hours" basis for determining leave.

d.  In violation of 29 C.F.R. §825.205(a), Union Pacific unlawfully deducts more

FMLA leave than the engineer actually uses when the engineer marks off and

misses a start or trip, because it insists on deducting all the "on-duty" hours that

are scheduled for such a "missed" start or trip, and not the hours of leave actually

used by the engineer in a particular instance of FMLA leave.

e.  Likewise, in violation of 29 C.F.R. §825.203(d), Union Pacific unlawfully fails to

grant FMLA leave in increments of an hour.  Instead of granting leave in the

increments required by federal law, Union Pacific grants leave in the increments

that *it* thinks make the most sense—the number of hours in a start.

3.  In Count II, BLET alleges that Union Pacific's TE&Y Attendance Policy

unlawfully chills the use of FMLA leave by disciplining or threatening to discipline engineers for

using FMLA leave on "weekends" or in "excessive amounts" even if the engineer is entitled to

FMLA leave and thereby violating 29 U.S.C. §2615 and 29 C.F.R. §825.220, and by failing to

include a sufficient description of FMLA rights in the attendance policy and thereby violating 29

U.S.C. §2619 and 29 C.F.R. §825.301.

**PARTIES**

4.  Plaintiff BLET is a labor organization representing locomotive engineers and

trainmen with its principle office located at 320 Brookes Drive, Suite 115, Hazelwood, MO

63042.  It represents persons residing and working within this judicial district.

5.  Defendant Union Pacific is a Rail Road Carrier engaged in the transportation of

persons and property in interstate commerce.  The Carrier operates a line of rail through this

judicial district and does business within it.

6.  Defendant Union Pacific is an employer within the meaning of FMLA, and is

subject to its provisions.

**JURISDICTION**

7.  This court has jurisdiction pursuant to 28 U.S.C. §1331 and 29 U.S.C. §2617.

8.  Venue is proper in this district under 23 U.S.C. §1391 as the defendant Union

Pacific is subject to personal service in this judicial district and operates its business in this

district.

**GENERAL FACTS**

9.   Locomotive engineers are full time employees who work long but somewhat

variable hours based on a number of factors including the number of "starts" or "runs" assigned

to the engineer, the distance of the routes on the "start" or "run," the length of time spent at the

away-from home terminal waiting for a return trip, the time spent waiting for a relief crew when

the engineer has reached the maximum allowable hours of service, as well as other factors.

10. Engineers in through-freight service, like the members of BLET, are assigned to a

pool of engineers, who are then placed on a board from which starts are assigned.

11. Union Pacific also maintains an "extra board" of other engineers who can cover shifts when someone lays off.  In fact, Union Pacific is contractually obligated to maintain sufficient staffing of the extra board to allow for reasonable lay offs by the regular board.

12. Engineers are on call twenty-four hours a day, seven days a week, i.e. as long as they are "marked-up" on the board, Union Pacific may assign them to a "start," so long as it complies with the Hours of Service Act, including all holidays and weekends.

13. The only time an engineer is not on call is if he "lays off," i.e. removes himself from the board and the pool of engineers on call.

14. Thus, if an engineer is sick, or needs to take care of a sick family member, or requires treatment for a chronic condition, he must lay off, or he runs the risk of being scheduled for work, and would either have to miss work (and be subject to discipline) or ignore the medical needs of himself or his family.

15. Once an engineer marks up again, he is immediately on call, and may be scheduled for a start at anytime, at the discretion of Union Pacific.

16. Union Pacific requires that an engineer be available for every assignment.

17. Union Pacific reserves the right to assign work to an engineer every single day.

**COUNT I:    UNION PACIFIC'S FMLA POLICY VIOLATES THAT ACT AND ITS IMPLEMENTING REGULATIONS**

18. Plaintiff incorporates ¶¶1 through 17 for all five parts of Count I, constituting ¶¶18 through 42.

**In violation of 29 U.S.C. §2612,**
**Union Pacific unlawfully shortens the "normal workweek" of engineers by failing to account for prior FMLA leave taken.**

19   Under FMLA, employees are entitled to receive up to twelve weeks of FMLA leave a year.

20. For this purpose, the applicable "week" is based on the employee's "normal work week," and in calculating the work week in the case of "variable hours," such a week is measured by averaging the number of hours worked per week in the twelve weeks or eighty four days preceding the request of FMLA leave.

21 Union Pacific calculates the "normal work week" of engineers on such a variable hours basis by averaging the number of hours worked per week in the twelve weeks preceding an engineer's first application for FMLA leave in a calendar year.

22. If the engineer has taken short term FMLA leave for a day or longer in the prior 84 day period, Union Pacific should count back by a day or more so that the average number of hours worked is not reduced because the engineer took such intermittent FMLA leave. Such leave may be for a flare up, for example, of a chronic illness for which the engineer is entitled to take FMLA or for treating a sick relative.

23. If the engineer is absent more than three days, Union Pacific does "hold harmless" the engineer and does extend the 84 day counting period used to determine the variable work week, but does not do so in the more typical case where the engineer takes such intermittent FMLA leave of only three days or less.

24. The result is that engineers who have chronic illnesses end up with shorter work weeks than the work week they "normally" work and Union Pacific uses their prior use of FMLA leave to prejudice their future right to FMLA leave under its "variable hours" approach.

25. In this manner, and in violation of 29 U.S.C. §2612, Union Pacific fails to provide the required 12 weeks of FMLA leave and unlawfully shortens the engineer's true "normal" work week because of a prior lawful use of intermittent FMLA leave for an intermittent illness or other short term absence.

**Union Pacific unlawfully shortens the "normal work week" by failing to count all an engineers' "working hours."**

26.  It is common for engineers to spend a night or more at the "away from home terminal" when working a "start" or trip.

27.  Union Pacific contracts to provide housing for engineers when they stay overnight at the away from home terminal, and such lodgings are regulated by federal code.  Engineers are subject to discipline, up to and including dismissal, for any and all of their actions at the lodging.

28.  An engineer who stays at the away from home lodging cannot spend his time as he would if he were at home, e.g. he cannot attend a child's performance, celebrate holidays with family, care for his property, play golf with friends, or simply hold his wife.

29.  An engineer who stays at the away from home lodging must spend his time in such a manner that he is prepared for work under Union Pacific Operating Rule 1.17.

30.  Engineers are paid for every hour they are at the away from home terminal in excess of sixteen hours when they are waiting for the return trip.

31.  Engineers are "engaged to wait" at the away from home terminal, and as such, those hours are "working hours" under the Fair Labor Standards Act.

32.  By failing to count the hours at the "away from home" terminal in calculating the hours worked in a "normal work week" of an engineer, Union Pacific violates the engineer's right to a normal work week based on all the hours actually worked by the engineer within the meaning of the Fair Labor Standards Act.

**Union Pacific unlawfully fails to re-calculate available FMLA leave as required by 29 C.F.R. §825.205(d).**

33. The amount of intermittent or reduced FMLA leave an engineer is entitled to is based on his "normal work week."

34  Under the "variable hours" approach, the employer must calculate an employee's "normal work week" at the beginning of each new "leave period," since the work week is necessarily variable and a prior calculation cannot be "re-used."

35. Nonetheless, while purporting to use the variable hours approach, Union Pacific makes a one-time only determination of an engineer's normal work week under 29 C.F.R. §825.205(d) for purposes of determining the amount of FMLA leave he is eligible for in each statutory twelve month period in 29 C.F.R. §825.200.

36. Union Pacific does not make a new determination of an engineer's "normal work week" with each new application as 29 CFR §825.205 necessarily requires and is therefore in violation of the regulation.

**Union Pacific unlawfully deducts more FMLA leave than used,
in violation of 29 C.F.R. §825.205(a).**

37. Engineers have the right to take FMLA leave on an intermittent or short term basis in increments of an hour or more, if otherwise qualified.

37. Engineers who miss a "start" or trip because of a FMLA qualifying leave may be able to work long before the "start" taken by a substitute engineer is completed.

38. Nevertheless, if an engineer misses a "start," Union Pacific will still count all the "on duty hours" of that start against the engineer's FMLA leave, regardless of the amount of intermittent FMLA leave that the engineer actually needs or used.

39. Accordingly, Union Pacific's FMLA policy violates 29 C.F.R. §825.205(a) because it forces engineers to use more leave than actually used.

40.  Furthermore, Union Pacific's FMLA policy violates 29 C.F.R. §825.203(d) because it fails to grant FMLA leave in increments of one hour as required by such regulation.

41.  Accordingly, by the various ways set forth above and in violation 29 U.S.C. §§2612 and 2615, and in further violation of 29 C.F.R. §§825.200, 825.203, and 825.205, the policy adopted by Union Pacific for calculating FMLA leave is unlawful, and the engineers represented by BLET are being unlawfully restrained and coerced and limited in the exercise of the FMLA leave rights to which they are entitled.

42.  The locomotive engineers represented by BLET are suffering irreparable injury from the violation of their FMLA rights.

WHEREFORE, plaintiff prays this Court to:

A.  Enjoin Union Pacific from continuing to calculate FMLA leave of BLET members on the basis of such policies;

B.  Enjoin Union Pacific from disciplining any engineer on the basis of that engineer's use of FMLA leave, in whole or in part, directly or indirectly;

C.  Order Union Pacific to consult with BLET, under the supervision of this court, and develop a FMLA policy which completely complies with FMLA and its implementing regulations;

D.  Order Union Pacific to re-calculate the available FMLA leave for all engineers under a policy which completely complies with FMLA and its implementing regulations;

E.  Order Union Pacific to rescind the discipline of any engineer who was so disciplined on the basis of that engineer's use of FMLA leave, in whole or in part, directly or indirectly; and

F.  Grant plaintiff its legal fees, costs, and such other relief as may be appropriate.

9

**Count II:** **Union Pacific's TE&Y Attendance Policy unlawfully chills the use of FMLA leave in violation of 29 U.S.C. §2615 in that it unlawfully threatens discipline engineers for using FMLA qualifying leave and fails to sufficiently describe engineers' FMLA rights**

43.    Plaintiff incorporates ¶¶ 1 through 42.

44.    Union Pacific requires that its engineers protect their job assignments, i.e. a "start" assigned them by Union Pacific, whenever that assignment is scheduled—twenty-four hours a day; seven days a week; weekends, holidays, and weddings.

45.    Under the TE&Y Attendance Policy, Union Pacific threatens discipline for engineers who frequently lay off on weekends (including Friday night), holidays (including within five days before or after), and "sickness," with no mention of any exemption for FMLA qualifying leave.

46.    This threat of discipline discourages and restrains the use of FMLA rights in violation of 29 U.S.C. §2615, since it fails to mention any exemption for FMLA qualifying leave.

47.    This policy makes it clear that engineers can be punished for taking sick leave which may be FMLA qualifying, for caring for sick relatives on a weekend even if it is FMLA qualifying, or even for taking "excessive" leave even if it is no greater than the twelve weeks to which an engineer may be entitled for a long term illness or otherwise.

48.    By the specific and aforesaid unlawful acts, set out in this count, and in violation of 29 U.S.C. §2615, 29 C.F.R. §825.220, and 29 C.F.R. §825.301, by threatening discipline for use of FMLA leave for illness or on weekends, or simply for using "too much" FMLA leave and by failing to exempt FMLA leave or FMLA qualifying leave from discipline under this policy, Union Pacific unlawfully interferes with and restrains engineers' use of FMLA leave.

49.     As a result of the calculation of FMLA leave under such a policy, plaintiff BLET

and its members have suffered irreparable harm.

WHEREFORE, plaintiff prays this Court to:

A.  Enjoin Union Pacific from disciplining engineers for using FMLA leave;

B.  Order Union Pacific to retroactively remove any and all disciplines of engineers related

to their use of FMLA leave;

C.  Order Union Pacific to re-hire and re-instate, with full seniority and back-pay, all

engineers who were terminated, in whole or in part, on any discipline, direct or indirect,

based on their use of FMLA leave;

D.  Order Union Pacific to consult with BLET and redraft its TE&Y Attendance Policy,

under the supervision of this Court, to conform with FMLA and its implementing

regulations;

E.  Order Union Pacific to include a more detailed description of engineers' FMLA rights in

any and all documents addressing attendance or leave policies, including the TE&Y

Attendance Policy; and

F.  Grant plaintiff its legal fees, costs, and such other relief as may be appropriate.

Respectfully submitted,

/s/ Thomas Geoghegan

Thomas Geoghegan
One of Plaintiff's Attorneys
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington, Suite 711
Chicago, IL  60602
Ph:  (312) 372-2511
Fax: (312) 372-7391

11