IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Brotherhood of Locomotive Engineers and Trainmen, General Committee of Adjustment, Central Region; | ) ) ) |
| | )     Judge Andersen |
| Plaintiff, | ) ) )     Magistrate Judge Mason |
| v. | ) ) |
| Union Pacific Railroad Company, | ) ) |
| Defendant. | ) |

**UNION PACIFIC RAILROAD COMPANY'S ANSWER TO COMPLAINT**

Union Pacific Railroad Company (Union Pacific) responds to the Plaintiff's Complaint in the like numbered paragraphs below:

1. BLET brings this action seeking injunctive relief from Union Pacific's continuous and willful violations of engineers' federal rights under the Family Medical Leave Act (FMLA). The engineers represented by BLET are on call 24 hours a day, seven days a week, weekends and holidays. At present, the only way that engineers get *any* time off from this round-the-clock schedule without discipline is to "lay off" by the use of previously approved FMLA leave, notwithstanding the engineers' other contractual leave rights which Union Pacific is currently disputing in other forums.

Answer: Union Pacific admits that BLET has brought this action, but denies the remaining allegations in the Introduction paragraph.

2. In Count I, BLET alleges that Union Pacific's new policy of calculating FMLA leave violates the FMLA rights of BLET engineers in at least five respects. This new

1

policy of calculating FMLA leave was unilaterally developed and implemented by Union Pacific after the United States District Court for the Northern District of Illinois invalidated Union Pacific's old FMLA policy which had unlawfully calculated leave rights based on the number of "starts" or trips taken by the engineers instead of the "hours worked" by the engineers when they actually took the trips. The District Court's decision of October 17, 2007 invalidating Union Pacific's old policy of calculating FMLA leave occurred in the case of *Brotherhood of Locomotive Engineers and Trainmen, General Committee of Adjustment Central Region; A.K. Schad, Mark Alexander, Dustin Etherton, Paul Moeller, and T.D. Curtis, on behalf of themselves and others similarly situated, v. Union Pacific Railroad Company* (07 C 0160)(Lindberg J.)(U.S. Dist Ct. N.D. Ill.). The District Court declined to take jurisdiction over the BLET's challenge to the calculation of hours worked under the new replacement policy, and accordingly BLET has filed this action, alleging five separate violations arising under the new FMLA leave policy:

    a. In violation of 29 U.S.C. §2612, Union Pacific has unlawfully shortened the "normal *workweek"* which is used to determine the twelve weeks of leave permitted under FMLA by counting the engineer's use of any prior "intermittent" FMLA leave (3 days or less). By counting days off in one of these prior weeks, Union Pacific purports to reduce the "normal" number of hours in a "normal" workweek" of the engineer, i.e., to penalize the engineer for any prior use of FMLA leave on an intermittent basis. Such a penalty for prior use of FMLA leave so as to reduce the "normal" workweek is unlawful.

    b. In violation of 29 C.F.R. §825.205(b), Union Pacific has also unlawfully shortened the true number of hours worked in a "normal workweek" by failing to count certain hours that many engineers spend at the "away from home terminal" waiting for a return trip or hours they spend when they are "dead-headed" or transported to initiate a "start" or trip at an "away from home terminal" that may be several hours away from their home terminal.

2

c. In violation of 29 C.F.R. §825.205(d) which provides for calculation of a work week when the hours are variable, Union Pacific unlawfully fails to determine the variable hour work week each time leave is taken. If the work week is variable, FMLA necessarily requires such a re determination each time leave is taken when Union Pacific is using a "variable hours" basis for determining leave.

d. In violation of 29 C.F.R. §825.205(a), Union Pacific unlawfully deducts more FMLA leave than the engineer actually uses when the engineer marks off and misses a start or trip, because it insists on deducting all the "on-duty" hours that are scheduled for such a "missed" start or trip, and not the hours of leave actually used by the engineer in a particular instance of FMLA leave.

e. Likewise, in violation of 29 C.F.R. §825.203(d), Union Pacific unlawfully fails to grant FMLA leave in increments of an hour. Instead of granting leave in the increments required by federal law, Union Pacific grants leave in the increments that it thinks make the most sense—the number of hours in a start.

Answer:   Paragraph 2 of the Complaint is not a short and plain statement of a claim as required by FRCP 8(a).  Instead, paragraph 2 is a two-page summary of Plaintiff's Count 1 to which no answer is required.  To the extent an answers may be required, Union Pacific denies the allegations in paragraph 2.

3. In Count II, BLET alleges that Union Pacific's TE&Y Attendance Policy unlawfully chills the use of FMLA leave by disciplining or threatening to discipline engineers for using FMLA leave on "weekends" or in "excessive amounts" even if the engineer is entitled to FMLA leave and thereby violating 29 U.S.C. §2615 and 29 C.F.R. §825.220, and by failing to include a sufficient description of FMLA rights in the attendance policy and thereby violating 29 U.S.C. §2619 and 29 C.F.R. §825.301.

Answer: Paragraph 3 of the Complaint is not a short and plain statement of a claim as required by FRCP 8(a). Instead, paragraph 3 is summary of Plaintiff's Count II to which no answer is required. To the extent an answers may be required, Union Pacific denies the allegations in paragraph 3.

4. Plaintiff BLET is a labor organization representing locomotive engineers and trainmen with its principle office located at 320 Brookes Drive, Suite 115, Hazelwood, MO 63042. It represents persons residing and working within this judicial district.

Answer: Union Pacific admits the allegations in paragraph 4.

5. Defendant Union Pacific is a Rail Road Carrier engaged in the transportation of persons and property in interstate commerce. The Carrier operates a line of rail through this judicial district and does business within it.

Answer: Union Pacific admits the allegations in paragraph 5.

6. Defendant Union Pacific is an employer within the meaning of FMLA, and is subject to its provisions.

Answer: Union Pacific admits the allegations in paragraph 6.

7. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and 29 U.S.C. §2617.

Answer: Union Pacific admits the court has jurisdiction pursuant to 29 U.S.C. § 2617, but to the extent the allegations assert jurisdiction pursuant to the Railway Labor Act according to 28 U.S.C. § 1331, the allegation is denied.

8. Venue is proper in this district under 23 U.S.C. §1391 as the defendant Union Pacific is subject to personal service in this judicial district and operates its business in this district.

Answer: Union Pacific admits the allegations in paragraph 8.

9. Locomotive engineers are full time employees who work long but somewhat variable hours based on a number of factors including the number of "starts" or "runs" assigned to the engineer, the distance of the routes on the "start" or "run," the length of time spent at the away-from home terminal waiting for a return trip, the time spent waiting for a relief crew when the engineer has reached the maximum allowable hours of service, as well as other factors.

Answer:  Union Pacific admits that locomotive engineers are considered full-time employees subject to the Hours of Service Act, that they may work variable hours based on a number of factors, but denies the remaining allegations of paragraph 9.

10. Engineers in through-freight service, like the members of BLET, are assigned to a pool of engineers, who are then placed on a board from which starts are assigned.

Answer: Union Pacific admits that engineers in through-freight service are assigned to a pool of engineers, who are placed on a board from which work is assigned, but denies the remaining allegations in paragraph 10.

11. Union Pacific also maintains an "extra board" of other engineers who can cover shifts when someone lays off.  In fact, Union Pacific is contractually obligated to maintain sufficient staffing of the extra board to allow for reasonable lay offs by the regular board.

Answer:  Union Pacific admits that it maintains "extra boards" pursuant to the collective bargaining agreement with the BLET, and that engineers assigned to the extra board are generally available to work when another engineer may lay off with the Company's approval, but denies the remaining allegations of paragraph 11.

12.   Engineers are on call twenty-four hours a day, seven days a week, i.e. as long as they are "marked-up" on the board, Union Pacific may assign them to a "start," so long as it complies with the Hours of Service Act, including all holidays and weekends.

Answer:  Union Pacific denies the allegations in paragraph 12.

13.   The only time an engineer is not on call is if he "lays off," i.e. removes himself from the board and the pool of engineers on call.

Answer:  Union Pacific denies the allegations in paragraph 13.

14.   Thus, if an engineer is sick, or needs to take care of a sick family member, or requires treatment for a chronic condition, he must lay off, or he runs the risk of being scheduled for work, and would either have to miss work (and be subject to discipline) or ignore the medical needs of himself or his family.

Answer:  Union Pacific admits that if an engineer is sick, needs to take off to care for a sick family member, or requires treatment for a chronic condition, the engineer must give Union Pacific notice and obtain approval to lay off, in advance the absence if it is anticipated or after the absence is not anticipated, or he or she risks being subjected to discipline for failure to protect his or her job assignment, but denies the remaining allegations of paragraph 14.

15.   Once an engineer marks up again, he is immediately on call, and may be scheduled for a start at anytime, at the discretion of Union Pacific.

Answer: Union Pacific denies the allegations in paragraph 15, and in further answer states that when engineers mark up after a laying off, they are indicating that they are available to work.

16.   Union Pacific requires that an engineer be available for every assignment.

Answer:  Union Pacific admits the allegations in paragraph 16.

6

17. Union Pacific reserves the right to assign work to an engineer every single day.

Answer: Union Pacific denies the allegations in paragraph 17.

18. Plaintiff incorporates ¶¶ 1 through 17 for all five parts of Count I, constituting ¶¶ 18 through 42.

Answer: Union Pacific incorporates its Answers to ¶¶ 1 through 17 for all five parts of Count I, constituting ¶¶ 18 through 42, as if fully restated herein.

19. Under FMLA, employees are entitled to receive up to twelve weeks of FMLA leave a year.

Answer: Union Pacific denies the allegations in paragraph 19.

20. For this purpose, the applicable "week" is based on the employee's "normal work week," and in calculating the work week in the case of "variable hours," such a week is measured by averaging the number of hours worked per week in the twelve weeks or eighty four days preceding the request of FMLA leave.

Answer: Union Pacific denies the allegations in paragraph 20, and states that the measure of a "workweek" applicable to variable scheduled employees is set forth in federal statute and regulation, including 29 U.S.C. § 2612(a) and 29 C.F.R. § 825.205(d).

21. Union Pacific calculates the "normal work week" of engineers on such a variable hours basis by averaging the number of hours worked per week in the twelve weeks preceding an engineer's first application for FMLA leave in a calendar year.

Answer: Union Pacific denies the allegations in paragraph 21.

22. If the engineer has taken short term FMLA leave for a day or longer in the prior 84 day period, Union Pacific should count back by a day or more so that the average number of hours worked is not reduced because the engineer took such intermittent FMLA

7

leave. Such leave may be for a flare up, for example, of a chronic illness for which the engineer is entitled to take FMLA or for treating a sick relative.

    Answer:  The allegations in paragraph 22 do not constitute a short and plain statement of a claim as required by FRCP 8(a), and no answer is required. To the extent an answer may be required, Union Pacific denies the allegations contained in paragraph 22.

    23.    If the engineer is absent more than three days, Union Pacific does "hold harmless" the engineer and does extend the 84 day counting period used to determine the variable work week, but does not do so in the more typical case where the engineer takes such intermittent FMLA leave of only three days or less.

    Answer:    Union Pacific denies the allegations in paragraph 23.

    24.    The result is that engineers who have chronic illnesses end up with shorter work weeks than the work week they "normally" work and Union Pacific uses their prior use of FMLA leave to prejudice their future right to FMLA leave under its "variable hours" approach.

    Answer:    Union Pacific denies the allegations in paragraph 24.

    25.    In this manner, and in violation of 29 U.S.C. §2612, Union Pacific fails to provide the required 12 weeks of FMLA leave and unlawfully shortens the engineer's true "normal" work week because of a prior lawful use of intermittent FMLA leave for an intermittent illness or other short term absence.

    Answer:    Union Pacific denies the allegations in paragraph 25.

    26.    It is common for engineers to spend a night or more at the "away from home terminal" when working a "start" or trip.

    Answer:    Union Pacific denies the allegations in paragraph 26.

27. Union Pacific contracts to provide housing for engineers when they stay overnight at the away from home terminal, and such lodgings are regulated by federal code. Engineers are subject to discipline, up to and including dismissal, for any and all of their actions at the lodging.

Answer: Union Pacific admits that it provides lodging consistent with the terms of the collective bargaining agreements, but denies the allegations in paragraph 27.

28. An engineer who stays at the away from home lodging cannot spend his time as he would if he were at home, e.g. he cannot attend a child's performance, celebrate holidays with family, care for his property, play golf with friends, or simply hold his wife.

Answer: The allegations in paragraph 28 do not constitute a short and plain statement of a claim as required by FRCP 8(a), and no answer is required. To the extent an answer may be required, Union Pacific denies the allegations contained in paragraph 28.

29. An engineer who stays at the away from home lodging must spend his time in such a manner that he is prepared for work under Union Pacific Operating Rule 1.17.

Answer: Union Pacific denies the allegations in paragraph 29.

30. Engineers are paid for every hour they are at the away from home terminal in excess of sixteen hours when they are waiting for the return trip.

Answer: Union Pacific admits that some engineers receive continuous-held time, but denies the remaining allegations in paragraph 30.

31. Engineers are "engaged to wait" at the away from home terminal, and as such, those hours are "working hours" under the Fair Labor Standards Act.

Answer: Union Pacific denies the allegations in paragraph 31.

32. By failing to count the hours at the "away from home" terminal in calculating the hours worked in a "normal work week" of an engineer, Union Pacific violates the engineer's right to a normal work week based on all the hours actually worked by the engineer within the meaning of the Fair Labor Standards Act.

Answer: Union Pacific denies the allegations in paragraph 32.

33. The amount of intermittent or reduced FMLA leave an engineer is entitled to is based on his "normal work week."

Answer: Union Pacific admits the allegations of paragraph 33 as "normal work week" is defined for variable scheduled employees in the federal regulations, but denies the remaining allegations of paragraph 33.

34. Under the "variable hours" approach, the employer must calculate an employee's "normal work week" at the beginning of each new "leave period," since the work week is necessarily variable and a prior calculation cannot be "re-used."

Answer: Union Pacific denies the allegations in paragraph 34.

35. Nonetheless, while purporting to use the variable hours approach, Union Pacific makes a one-time only determination of an engineer's normal work week under 29 C.F.R. §825.205(d) for purposes of determining the amount of FMLA leave he is eligible for in each statutory twelve month period in 29 C.F.R. §825.200.

Answer: Union Pacific admits that it uses a twelve-month calendar period pursuant to 29 C.F.R. § 825.200 for the administration of its FMLA policy, and denies the remaining allegations of paragraph 35.

36. Union Pacific does not make a new determination of an engineer's "normal work week" with each new application as 29 CFR §825.205 necessarily requires and is therefore in violation of the regulation.

Answer:    Union Pacific denies the allegations in paragraph 36.

37.    Engineers have the right to take FMLA leave on an intermittent or short term basis in increments of an hour or more, if otherwise qualified.

Answer:    Union Pacific denies the allegations in paragraph 37.

37. (SECOND)  Engineers who miss a "start" or trip because of a FMLA qualifying leave may be able to work long before the "start" taken by a substitute engineer is completed.

Answer:    Union Pacific admits that a variable scheduled engineer, who lays off with a qualifying leave under its FMLA policy, may be able to mark up before the trip taken by a substitute engineer is completed, but denies the remaining allegations of paragraph 37 (Second).

38.    Nevertheless, if an engineer misses a "start," Union Pacific will still count all the "on duty hours" of that start against the engineer's FMLA leave, regardless of the amount of intermittent FMLA leave that the engineer actually needs or used.

Answer:    Union Pacific admits that when that a Union Pacific variable scheduled engineer, who lays off with a qualifying leave under its FMLA policy, misses a start because of the employee's approved FMLA leave, Union Pacific will deduct from the employee's available FMLA leave hours the on-duty hours the variable scheduled engineer missed as a result of taking the FMLA leave, but denies the remaining allegations of paragraph 38.

39.    Accordingly, Union Pacific's FMLA policy violates 29 C.F.R. §825.205(a) because it forces engineers to use more leave than actually used.

Answer:    Union Pacific denies the allegations in paragraph 39.

40. Furthermore, Union Pacific's FMLA policy violates 29 C.F.R. §825.203(d) because it fails to grant FMLA leave in increments of one hour as required by such regulation.

Answer: Union Pacific denies the allegations in paragraph 40.

41. Accordingly, by the various ways set forth above and in violation 29 U.S.C. §§2612 and 2615, and in further violation of 29 C.F.R. §§825.200, 825.203, and 825.205, the policy adopted by Union Pacific for calculating FMLA leave is unlawful, and the engineers represented by BLET are being unlawfully restrained and coerced and limited in the exercise of the FMLA leave rights to which they are entitled.

Answer: Union Pacific denies the allegations in paragraph 41.

42. The locomotive engineers represented by BLET are suffering irreparable injury from the violation of their FMLA rights.

Answer: Union Pacific denies the allegations in paragraph 42.

43. Plaintiff incorporates ¶¶ 1 through 42.

Answer: Union Pacific incorporates its Answers to ¶¶ 1 through 42, as if fully restated herein.

44. Union Pacific requires that its engineers protect their job assignments, i.e. a "start" assigned them by Union Pacific, whenever that assignment is scheduled—twenty-four hours a day; seven days a week; weekends, holidays, and weddings.

Answer: Union Pacific admits that it requires its engineers to protect their job assignments and admits that through freight engineers are variably scheduled employees, but denies the remaining allegations of paragraph 44.

45. Under the TE&Y Attendance Policy, Union Pacific threatens discipline for engineers who frequently lay off on weekends (including Friday night), holidays (including

within five days before or after), and "sickness," with no mention of any exemption for FMLA qualifying leave.

 Answer: Union Pacific admits that its TE&Y Attendance Policy contemplates disciplinary consequences for employees who are frequently absent, but denies that the attendance policy in any manner constricts or inhibits an employee's right to take FMLA leave under Union Pacific's FMLA Policy, and denies the remaining allegations of paragraph 45.

 46. This threat of discipline discourages and restrains the use of FMLA rights in violation of 29 U.S.C. §2615, since it fails to mention any exemption for FMLA qualifying leave.

 Answer: Union Pacific denies the allegations in paragraph 46.

 47. This policy makes it clear that engineers can be punished for taking sick leave which may be FMLA qualifying, for caring for sick relatives on a weekend even if it is FMLA qualifying, or even for taking "excessive" leave even if it is no greater than the twelve weeks to which an engineer may be entitled for a long term illness or otherwise.

 Answer: Union Pacific denies the allegations in paragraph 47.

 48. By the specific and aforesaid unlawful acts, set out in this count, and in violation of 29 U.S.C. §2615, 29 C.F.R. §825.220, and 29 C.F.R. §825.301, by threatening discipline for use of FMLA leave for illness or on weekends, or simply for using "too much" FMLA leave and by failing to exempt FMLA leave or FMLA qualifying leave from discipline under this policy, Union Pacific unlawfully interferes with and restrains engineers' use of FMLA leave.

 Answer: Union Pacific denies the allegations in paragraph 48.

49. As a result of the calculation of FMLA leave under such a policy, plaintiff BLET and its members have suffered irreparable harm.

Answer: Union Pacific denies the allegations in paragraph 49.

In further answer, to the extent that any other allegations have been asserted in the Complaint, expressly including any statements asserted in the captions, headings and prayers for relief, Union Pacific denies those allegations.

WHEREFORE, Union Pacific requests the Court:

A. Deny plaintiffs all relief requested and dismiss this complaint with prejudice;

B. Award Union Pacific its costs under Rule 54 (d), Fed. R. Civ. P. and attorney fees; and

**C.** Grant Union Pacific such other relief as the Court deems appropriate and justice may require.

**UNION PACIFIC RAILROAD COMPANY'S AFFIRMATIVE DEFENSES**

Plaintiff's complaint fails to state a claim upon which relief can be granted.

1. Plaintiffs are not entitled to any of the relief they seek as a matter of law.

2. Any dispute over the propriety of Union Pacific's disciplinary rules constitutes a minor dispute that must be resolved pursuant to the procedures set forth in the agreement and Section 3 of the Railway Labor Act, 45 U.S.C. §153, and over which this Court lacks jurisdiction.

3. Plaintiffs have failed to exhaust their administrative remedies.

4. The relief sought by Plaintiff in this action is barred in whole or in part by the doctrine of preclusion.

5. The equitable relief sought by Plaintiff in this action is barred in whole or in part by the doctrine of estoppel.

>Respectfully submitted,
>
>s/ Thomas W. Cushing
>Union Pacific Law Department
>101 N. Wacker Dr., Suite 1920
>Chicago, IL 60606
>Telephone (312) 777-2053

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a copy of Defendant's Answer to Plaintiff's Complaint, was sent via U.S. Mail to Thomas Geoghegan, Despres Schwartz & Geoghegan, 77 W. Washington, Suite 711, Chicago, IL 60602 on July 14, 2008.

>s/ Thomas Cushing